ROBERT L. BLAND, Judge,
dissenting
An award in this case was made by majority members of the court. The court act provides: “If the determination of the court is not unanimous, the reasons of the dissenting judge shall be separately stated.” In obedience to this mandate I respectfully submit the following reasons for not concurring in said award.
*277 I see no justifiable ground for recommending to the Legislature an appropriation for the payment by the state of West Virginia of the claim in question. No liability to pay, on the part of the state, is disclosed by the record. It is a claim against the Federal Government rather than one aganst the state of West Virginia.
I grant that the claim makes a strong appeal to the sympathy of the members of the court, but an award may not properly be made on the ground of sympathy. There should be some legal or equitable basis to support an award in favor of the claimant against the state of West Virginia, and no such basis exists.
A careful reading of the record discloses the following state of facts out of which the claim arises:
One Arel B. Cook, a federal employee and at the time state supervisor of education for the works progress administration, was desirous of arranging for holding a meeting or convention of the state educational supervisors of the works progress administration at one of the state parks in West Virginia. He went to the office of Linn Wilson, then chief of the division of parks of the state of West Virginia, and arranged with him for carrying out his plans for the holding of such meeting. Thereafter said Wilson corresponded with one S. E. Nease, at that time park custodian of the Watoga state park, in Pocahontas county, West Virginia, who arranged on behalf of said Arel B. Cook, state supervisor of education for the works progress administration, to have a group of works progress administration officials entertained at said Watoga park for one week, beginning on Sunday, September 7, 1941, and ending on Saturday, September 13,1941. Said Nease concluded arrangements with Florence Doyle, the claimant, to furnish these meals for a group of fifty-five of these works progress administration officials, including their wives and children, during that week.
As I interpret the record, Nease, in making this arrangement, was acting at the behest and for and on behalf of Cook. The *278 meeting or convention was not a state affair. It was distinctly a federal project of the works progress administration. Under the terms of the arrangement made by Nease one dollar a day was to be paid to claimant for furnishing meals and fifty cents per day was to be transmitted by Nease, with his weekly report, to the office of Wilson. It nowhere appears in the record that this balance of fifty cents per day for each member of the group was not to be accounted for to the federal works progress administration, or that it was paid to the state conservation commission. Claimant furnished these meals to fifty-five persons for six days. She was not paid by any person for such meals. It is true that Cook, state educational supervisor for the works progress administration, who made the arrangement for the holding of the convention in question did deliver to her a check for fifteen dollars on account of the meals furnished by her, but said check was never paid.
Mrs. Doyle’s claim of $318.00 was presented to the state fiscal officers of the works progress administration for payment, but payment was refused on the ground that there had been no prior authorization for the educational meeting held at Watoga park, and advice was given that her claim would have to be submitted to the general accounting office in Washington.
Thereafter the claim was presented to the state conservation commission for payment. This commission made requisition upon the auditor for the sum of $318.00 in settlement of said claim, after the same had been approved by the state department of purchases. The auditor, however, with characteristic alertness in safeguarding the public funds of the state, declined to pay the claim on the ground that it did not constitute a proper or lawful claim against the state of West Virginia.
The chief clerk of the auditor’s office discussed the claim with the secretary of the state conservation commission. The latter agreed that the claim was not a proper claim against the state. In a letter written by the chief clerk of the auditor’s office to the clerk of the state conservation commission, under *279 date of February 24,1942, this statement was made: “It appears from the explanation you have made that this is a charge against the United States Treasury and the State of West Virginia is advancing the money.” The secretary of the state conservation commission thereupon informed the chief clerk of the auditor’s office that it was a claim against the United States treasury, but that claimant needed her money and that the state was going to advance the amount of her claim to her and then seek reimbursement from the Federal Government.
The payment of the claim was rejected by the auditor and not again heard from by him until it was filed in the court of claims, where the state continued to resist its payment as a proper demand against the state.
I have the profoundest sympathy for Mrs. Doyle, a worthy and deserving lady, who has been made the unfortunate victim of circumstances that should be further investigated, but I am unable to see how, under the showing made by the record, that she would be entitled to an award against the state of West Virginia. I do not think that the court of claims has power to make such award.
I would sustain the motion of the assisatnt to the attorney general, and dismiss the claim.
As a concluding observation I make this inquiry: Who got the money that should have been paid to Mrs. Doyle?